UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
RAPHAEL FASAN,

        Plaintiff,

  - against -

MCROBERTS PROTECTIVE AGENCY INC.,

        Defendant.
-------------------------------------------------------------X

**MEMORANDUM AND ORDER**
13-CV-4658 (RRM) (LB)

ROSLYNN R. MAUSKOPF, United States District Judge.

    Plaintiff *pro se* Raphael Fasan was employed by the defendant, McRoberts Protective Agency, Inc. ("McRoberts") as a security officer, and assigned to work at a Consolidated Edison ("Con Ed") facility. Fasan alleges that McRoberts violated the Americans with Disabilities Act of 1990 ("ADA") by prohibiting him from using the bathroom between 3:00 and 6:00 p.m., thereby failing to accommodate his disability – frequent urination related to diabetes.

    McRoberts has moved for summary judgment. Because Fasan's medical condition does not substantially limit any of his major life activities, it does not qualify as a disability under the ADA, and McRoberts has no duty to accommodate his medical needs. Moreover, there is no evidence that McRoberts prevented Fasan from using the bathroom after it was notified of his medical condition; in fact, the only evidence in the record demonstrates that Fasan was allowed to use the bathroom as necessary. For these reasons, McRoberts' motion for summary judgment is granted.

# BACKGROUND[1]

Fasan was hired as a security officer by McRoberts on August 3, 2010. He claims that he told McRoberts and "every security guard and supervisor[] [he] worked with" that he was diabetic. Fasan worked at a handful of client locations before being assigned to a Con Ed facility in Brooklyn, where he remained until his termination. His primary responsibilities there were to monitor the Third Street gate (to which he was the sole security officer assigned) and control access to the facility. Fasan was required to note in the log book every time he left and returned to the guard booth, and to close and lock the gate any time he left his post to go to the bathroom. According to the Specific Post Orders for Fasan's assigned location, he was required to remain at his post until another security officer arrived to relieve him. McRoberts permitted him to use the restroom as necessary, consistent with these directives.

McRoberts notes that Fasan repeatedly failed to abide by these policies, and sets forth 23 separate instances between July 20, 2012 and September 30, 2012 when he failed to properly account for his personal breaks.[2] About halfway through this stretch, the Field Supervisor noted in the logbook that Fasan needed to be counseled on his log entries for personal breaks. A more general reminder was issued on September 20, 2012, when the Shift Supervisor wrote in the logbook that all guards needed to record when they left and returned to their post after personal breaks. In addition, Fasan was issued written Notices of Failing or Unacceptable Performance on six separate occasions. His performance failures included: arriving late for scheduled shifts; failing to follow proper access control procedures; not following patrol procedures; screaming at a fellow security officer and supervisor; leaving his post on a personal break without waiting for

---

[1] As Fasan did not submit a Rule 56.1 Statement, the facts in this section are drawn from McRoberts' Rule 56.1 statement, Fasan's complaint, and all other submissions by both parties. Disputes are noted.
[2] Notably, this list only includes occasions on which Fasan submitted a logbook entry, which, in most instances, did not adequately document his breaks per McRoberts' policies. Occasions on which Fasan took personal breaks without making *any* logbook notation are not included in this list.

face-to-face relief; and improperly recording a personal break in the logbook. The last Notice stated that when his supervisor spoke to him about the error, Fasan was "rude" in response, and it was recommended that Fasan be removed from this post. Fasan disputes that these Notices were ever presented to him, or that McRoberts or Con Ed informed him that his performance was subpar. He states that "from the time I was hired, to the day my employment was terminated on 10/2/12, I was never told I did a bad job."

The instant lawsuit arises out of a notification to all security guards in a logbook entry of September 24, 2012 that Fasan claims prohibited him from using the bathroom between 3:00 and 6:00 p.m. That entry, written by McRoberts' Shift Supervisor, Michelle Reid, states:

> "All guards on the 3pm–11am tour
> First street guard will lock 1st gate
> at 1745 to relief 3rd street guard
> for their first personal guard should
> return back to post before 1800. Starting
> today Monday 9/24/12."

The day after this entry appeared, Fasan claims that he confronted Reid about it, asking if she was discriminating against him because of his disability.[3] Reid responded that McRoberts instructed her to write the note, and that he should take up any complaints with the Vice President of McRoberts' New York branch, John Kalle. McRoberts claims that even if this entry did purport to prohibit him from using the restroom as necessary, Fasan was not actually prevented from doing so, and notes that Fasan recorded personal breaks on six different occasions after the logbook entry appeared without being disciplined or reprimanded at all.

---

[3] As Fasan maintains: "When I read the order in the log book, the following day, I asked the site supervisor Reid why did you discriminate against me and my disability knowing that I am diabetic, and I can't work with the fear that as a diabetic, I can feel like urinating anytime. Why did you remove the accommodation I have had since August 2010? And why is it that every other security guard could use the bathroom anytime they want even though they are not diabetic?" (Resp. in Opp. (Doc. No. 23) at 3) (quoted exactly as written).

3

Fasan was removed from all Con Ed locations shortly after the last Notice was issued. McRoberts claims that it then scheduled a meeting with Fasan to determine whether he could be placed with a different client. Fasan contends that he scheduled a meeting with Kalle and McRoberts to discuss the note – either way, after meetings on October 2 and October 3, Fasan was fired on October 4, 2012.

Fasan filed this complaint on August 14, 2013. (Doc. No. 1.) McRoberts filed its Answer on October 21, 2013 (Doc. No. 10), and after discovery, McRoberts filed its fully briefed motion for summary judgment, together with Fasan's opposition and its reply, on August 6, 2014. (Doc. Nos. 24-26.)

## LEGAL STANDARD

Summary judgment may be granted when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003). And in deciding whether a genuine issue of material fact exists as to an essential element, "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).

Summary judgment may also be appropriate "if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [his or her] case," on which "the nonmoving party bears the burden of proof at trial." *Nebraska v. Wyoming*, 507 U.S. 584, 590

(1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted); *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002). To defeat the defendants' motion for summary judgment, the plaintiff must offer "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor," *Anderson*, 477 U.S. at 256, and "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

The Court is also mindful, however, that the plaintiff is proceeding *pro se*. As such, his submissions are held to a less exacting standard than those drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (citation omitted). Because the submissions of *pro se* litigants "are entitled to a liberal construction," the Court reads Johnson's submissions to "raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal citations omitted). Nonetheless, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Molina v. New York,* 956 F. Supp. 257, 259 (E.D.N.Y. 1995). Where a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, the Court must dismiss the claim. *See Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997) (citation omitted).

## DISCUSSION

### I. Failure to Accommodate

The ADA protects "qualified individual[s]" from being discriminated against "on the basis of disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The statute also makes unlawful an employer's failure to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," as long as such accommodations would not

impose an undue hardship upon the employer. 42 U.S.C. § 12112(b)(5)(A). Where, as here, a plaintiff claims that he can perform the job with a reasonable accommodation, the plaintiff must show that "(1) [he] is a person with a disability under the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [he] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of New York*, 711 F. 3d 120, 125 (2d Cir. 2013).

Even a serious medical condition is not necessarily a disability under the ADA; in order to qualify as one, it must "substantially limit a major life activity." *Pagan v. Morrissania Neighborhood Family Health Ctr.*, No. 12-CV-9047 (WHP), 2014 WL 464787, at *4 (S.D.N.Y. Jan. 22, 2014). In addition to "seeing, hearing, eating, [and] sleeping," major life activities include "the operation of a major bodily function, including . . . digestive, bowel, [and] bladder . . . functions." 42 U.S.C. § 12102(2); *Morris v. Town of Islip*, No. 12-CV-2984 (JFB)(SIL), 2014 WL 4700227, at *9 (E.D.N.Y. Sept. 22, 2014). The ADA does not define what constitutes a "substantial limitation," but it is clear that the standard is "not meant to be demanding" and "should not demand extensive analysis." *Morris*, 2014 WL 4700227 at *9. As a result, an impairment will be considered a disability under the ADA "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* (quoting *Risco v. McHugh*, 868 F. Supp. 2d 75, 108 n.47 (S.D.N.Y. 2012)) (quotation omitted).

Fasan does not allege that his diabetes and his frequent urination condition constitute such a limitation, and he does not offer any medical evidence that his diabetes requires frequent trips to the restroom. "Courts in the Second Circuit have consistently held that when a plaintiff fails to offer any medical evidence substantiating the specific limitations to which he claims he is

subject due to his conditions, he cannot establish that he is disabled within the meaning of the ADA." *Buotote v. Illinois Tool Works, Inc.*, 815 F. Supp. 2d 549, 557 (D. Conn. 2011) (citations and quotations omitted); *see also Callistro v. Cabo*, No. 11-CV-2897 (DC), 2013 WL 322497, at *10 (S.D.N.Y. Jan. 25, 2013) (noting that a plaintiff must provide such evidence to support such a failure-to-accommodate claim); *Sussle v. Sirina Protection Syst. Corp.*, 269 F. Supp. 2d 285, 302 (S.D.N.Y. 2003) (a plaintiff relying solely on his own testimony and failing "to offer any *medical* evidence substantiating the specific limitations to which he claims he is subject due to his condition" cannot create a material issue of fact as to whether the plaintiff is disabled within the meaning of the ADA) (emphasis in original) (internal quotations and citation omitted). Accordingly, even if Fasan did allege that his medical condition substantially limited a major life activity, his failure to provide any medical evidence of his condition therefore precludes his ailment from qualifying as a disability under the ADA.

Moreover, to qualify as a disability under the ADA, Fasan's medical condition must substantially limit a major life activity. But Fasan does not offer any evidence that his illness impacts his daily life in any way other than requiring trips to the restroom. Crucially, he does not claim that his trips to the restroom are so frequent or so unpredictable as to render him unable to do his job. In fact, the evidence demonstrates the opposite – the logbook entries show that he was capable of working 8- and 12-hour shifts without needing a single bathroom break. While frequent urination, under more drastic circumstances than found here, could potentially qualify as a disability under the ADA, Fasan has not shown that his medical condition rises to that level. Furthermore, courts have not found frequent urination to qualify as a disability where the facts resemble those found here. *See, e.g.*, *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 871 (2d Cir. 1998) (finding that colitis, which limited the plaintiff's ability to control her elimination of

7

waste, did not substantially limit a major life activity because of its varied intensity and because it was asymptomatic for long periods of time); *Williams v. H.N.S. Mgmt. Co.*, 56 F. Supp. 2d 215, 221 (D. Conn. 1999) (finding that diabetes causing frequent urination did not substantially impair the life activity of working, as the plaintiff was only restricted from a narrow set of jobs where restrooms were not frequently accessible). As a result, Fasan's frequent urination does not qualify as a disability under the ADA.

The analysis could end here. Because Fasan does not suffer from a disability under the ADA, McRoberts had no duty to provide reasonable accommodations to him. But even if Fasan's condition did qualify as a disability, he would still fall short of the required showing for a failure to accommodate claim. The second prong of the standard requires an ADA-covered employer to have notice of the disability, and "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127 (2d Cir. 2008) (citing *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006)); *see also Felix v. New York City Transit Auth.*, 154 F. Supp. 640, 657 (S.D.N.Y. 2001) ("The notice requirement is rooted in common sense. Obviously, an employer who acts or fails to act without knowledge of a disability cannot be said to have discriminated based on that disability.") (citation omitted). However, there is an exception to the notice requirement where the disability in question "is obvious or otherwise known to the employer without notice from the employee." *Brady*, 531 F.3d at 135.

Fasan claims that he told McRoberts, his supervisors, and his co-workers that he was diabetic, but he does not contend that he informed McRoberts of his frequent urination problem until the day after Reid's logbook entry allegedly prohibited his bathroom access between 3:00 and 6:00 p.m. (Resp. in Opp. (Doc. No. 25) at 3.) As McRoberts' supervision of and

interactions with its employees were generally limited to intermittent visits of their assigned security posts and reviews of on-site logbooks, there was little occasion on which it could observe Fasan's disability. Further, the logbook entries do not reflect that Fasan constantly took frequent bathroom breaks – as previously stated, they show that he sometimes worked 8- or 12-hour shifts without taking a break. Because there is no evidence that Fasan's disability was obvious to McRoberts, and Fasan does not claim that McRoberts should have known of his disability, it was Fasan's responsibility to notify McRoberts of his medical needs. There is no evidence that Fasan did so before his September 25th conversation with Reid. As such, McRoberts could only be liable for failing to accommodate it after this conversation.

However, it is clear that McRoberts did not, in fact, prevent Fasan from taking personal breaks, even after he notified the organization of his ailment. The record clearly indicates that Fasan logged five personal breaks between 3:00 and 6:00 p.m. on the three days immediately following Reid's logbook entry – at 5:02 p.m. and 5:44 p.m. on September 25th, at 3:40 p.m. on September 26th, at 5:50 p.m. on September 27th, and at 4:05 p.m. on September 28th. There is no evidence, and Fasan does not claim, that McRoberts even questioned Fasan about these breaks, much less that it reprimanded him or disciplined him for taking them. Allowing him to take personal breaks as necessary would suffice as a reasonable accommodation even if Fasan's medical condition qualified as a disability under the ADA, and Fasan therefore falls short on the fourth prong of his required showing as well – that McRoberts refused to reasonably accommodate his medical needs.[4]

In sum, Fasan's failure-to-accommodate claim fails as a matter of law. His frequent urination does not qualify as a disability under the ADA, and even if it did, there is no evidence

---

[4] Fasan and McRoberts dispute whether he could perform the "essential functions of the job," the third prong of Fasan's required showing. Because he cannot show that he suffers from a disability under the ADA or that McRoberts failed to reasonably accommodate his medical condition, the Court need not address this dispute.

that McRoberts ever prohibited him from using the bathroom as necessary, even after the logbook entry appeared.

## II.     Discriminatory Discharge

Given that Fasan was fired soon after he notified McRoberts of his disability, it is possible that he seeks to maintain a discriminatory discharge claim rather than a failure to accommodate claim. However, this claim would fail as well.

To establish a wrongful discharge claim under the ADA, Fasan must show that 1) McRoberts is subject to the ADA; 2) Fasan suffers from a disability within the meaning of the ADA; 3) Fasan was otherwise qualified to perform his job functions; and 4) Fasan suffered an adverse employment action because of his disability. *See Sista v. CDC Ixis N. Am. Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

McRoberts does not dispute that it is subject to the ADA. However, for the reasons articulated above, Fasan's medical condition does not qualify as a disability under the ADA, as he does not allege or provide any evidence that it substantially limits a major life activity. He therefore cannot make the showing required by law, and any wrongful discharge claim would fail. Further, even if his medical condition qualified as a disability under the ADA, Fasan does not offer any evidence that McRoberts' proffered non-discriminatory reasons for his dismissal were pretextual, or that his termination was based on any disability. *See id.* (citing *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program*, 198 F.3d 68, 72 (2d Cir. 1999)).

**CONCLUSION**

For the reasons set forth above, the Court finds that McRoberts is entitled to summary judgment, and its motion for summary judgment is therefore **GRANTED**.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is directed to mail a copy of this Memorandum and Order and the accompanying Judgment to *pro se* plaintiff, and to close the case.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
       March 20, 2015

_____
ROSLYNN R. MAUSKOPF
United States District Judge